11-3421-cr
United States v. Hagerman

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 20th day of December, two thousand twelve.

Present:
　　　　JOHN M. WALKER, JR.,
　　　　ROBERT A. KATZMANN,
　　　　DEBRA ANN LIVINGSTON,
　　　　　　　*Circuit Judges*,

_____

UNITED STATES OF AMERICA,

　　　　*Appellee*,

　　　　　　v.　　　　　　　　　　　　　No.  11-3421-cr

PAUL HAGERMAN,

　　　　*Defendant-Appellant*.

_____

| | |
|---|---|
| For Defendant-Appellant: | MOLLY CORBETT, Research and Writing Specialist, (Gene V. Primomo, Assistant Federal Public Defender, Lisa Peebles, Interim Federal Public Defender, *of counsel*), Federal Public Defender Office, Albany, N.Y. |
| For Appellee: | RICHARD FRIEDMAN, Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C. |

(Tamara Thomson, Assistant United States Attorney, Northern District of New York, *on the brief*), *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Gregory D. Andres, Acting Deputy Assistant Attorney General, and Lanny A. Breuer, Assistant Attorney General, Criminal Division, United States Department of Justice.

Appeal from the United States District Court for the Northern District of New York (Suddaby, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment and order of the district court be and hereby are **AFFIRMED** in part, **REVERSED** in part, and **REMANDED**.

Defendant-Appellant Paul Hagerman appeals from a judgment and a post-judgment restitution order of the United States District Court for the Northern District of New York (Suddaby, *J.*), convicting him, following his guilty plea, of one count of receiving child pornography and one count of possessing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) & (a)(5)(B).  On August 17, 2011, the district court imposed a Guidelines sentence of ninety-seven months' imprisonment, a life term of supervised release, and a special assessment of $200.  On November 30, 2011, the district court entered a post-judgment order holding the defendant jointly and severally liable to the victim for $975,917.64 in restitution, pursuant to 18 U.S.C. § 2259.  On appeal, Hagerman contends that his sentence is procedurally unreasonable because the district court offered only a limited explanation for its sentence, and substantively unreasonable because it fails to take into account his personal circumstances.  Hagerman also contends that the order of restitution is unlawful because: (1) Hagerman's possession of the pornography did not proximately cause the victim's harm; (2) the monetary harm the district court attributed to Hagerman's conduct is too high; (3) he cannot be held jointly

2

and severally liable for all of the harm suffered by the victim; and (4) the district court failed to consider his financial ability to pay the restitution award and set an appropriate payment schedule. We presume the parties' familiarity with the underlying facts and procedural history of this case as well as with the issues on appeal.

We review a district court's sentence for "reasonableness, which is 'akin to review for abuse of discretion, under which we consider whether the sentencing judge exceeded the bounds of allowable discretion, committed an error of law in the course of exercising discretion, or made a clearly erroneous finding of fact.'" *United States v. Leslie*, 658 F.3d 140, 142 (2d Cir. 2011) (per curiam) (quoting *United States v. Williams*, 475 F.3d 468, 474 (2d Cir. 2007)). "A district court commits procedural error where it fails to calculate the Guidelines range (unless omission of the calculation is justified)," "makes a mistake in its Guidelines calculation," "treats the Guidelines as mandatory," "does not consider the [sentencing] factors" set out in 18 U.S.C. § 3553(a), "rests its sentence on a clearly erroneous finding of fact," or "fails adequately to explain its chosen sentence." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc). Where the Court determines that there was no procedural error in a district court's sentencing, it "then considers the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard, taking into account the totality of the circumstances." *United States v. Rigas*, 583 F.3d 108, 121 (2d Cir. 2009) (internal quotation marks omitted). Although we do not presume that a sentence within the Guidelines range is reasonable, *United States v. Dorvee*, 616 F.3d 174, 182 (2d Cir. 2010), a district court's substantive findings will be set aside only "in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions," *Cavera*, 550 F.3d at 189 (internal quotation marks omitted).

3

Hagerman contends that the district court's imposition of a 97-month term of imprisonment is procedurally unreasonable because the court offered a very limited explanation for its sentence. We disagree. Although the district court did not offer a lengthy explanation for its sentence, viewing the transcript in context, the district court provided a reasoned justification. Before pronouncing its sentence, the district court noted that it had reviewed and considered all of the information provided to it, and adopted the factual information contained in the Presentence Report. The court then sentenced Hagerman to 97 months' imprisonment, concluding this was "sufficient but not greater than necessary to satisfy the requirements of justice in this case." App'x 76–77.

Immediately after announcing the sentence, the district court also found that the defendant "need[ed] extensive mental health treatment," noting that although Hagerman "ha[d] been victimized himself," "the need for non-disparate treatment in these types of cases, [together with] . . . the number of images, the violent nature of the images," and that the defendant transported the images on a handheld device, were "all indications of a severe problem that needs addressing." *Id.* at 77. These specific factors were mentioned in connection with the court's recommendation that Hagerman participate in mental health and sex offender treatment while in prison, but they also demonstrate that the district court considered the factors outlined in § 3553(a) in fashioning its sentence. For example, the district court's mention of "the need for non-disparate treatment in these types of cases," is a reference to § 3553(a)(6), which sets forth "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." This reference identifies the court's reasoning for the length of the sentence and does not relate to whether Hagerman could benefit from

4

mental health and sex offender treatment. Although the district court cannot fashion a sentence "to promote an offender's rehabilitation," *Tapia v. United States*, --- U.S. ----, 131 S. Ct. 2382, 2391 (2011), we have held that it is not procedurally unreasonable for a court to discuss rehabilitation in the course of issuing its sentence, so long as the length of the sentence is based on permissible considerations. *See United States v. Gilliard*, 671 F.3d 255, 259 (2d Cir. 2012). Here, in discussing the violent nature of the photographs and the need to avoid unwarranted sentencing disparities, balancing those factors against Hagerman's own history of abuse, the district court gave sufficiently specific "reasons . . . for its chosen sentence." *United States v. Echeverri*, 460 F. App'x 54, 56 (2d Cir. 2012) (summary order) (holding sentence procedurally unreasonable where district court's only explanation for sentence was that the "low end" of the Guidelines range was "sufficient but not greater than necessary" to satisfy § 3553(a)). There is no "requirement that a sentencing judge precisely identify either the factors set forth in § 3553(a) or [respond to] specific arguments bearing on the implementation of those factors in order to comply with [his] duty to consider all the § 3553(a) factors," *United States v. Fernandez*, 443 F.3d 19, 29 (2d Cir. 2006) (emphasis omitted), and we conclude that the district court has sufficiently discharged its duty here.

Hagerman also argues that the district court's sentence was substantively unreasonable in light of his offense characteristics and personal background. In particular, Hagerman notes that he has no prior criminal history, that he is the victim of sexual abuse, that he has never sexually abused a minor, and that a psychological assessment concluded that he poses only a low to moderate risk of reoffending. *See, e.g.*, *Dorvee*, 616 F.3d at 183-84 (reversing statutory maximum sentence of 240 months where district court presumed reasonableness based on a

5

Guidelines range above the statutory maximum and speculated that defendant was at high risk of re-offending). We do not find this argument persuasive, as this is not an "*exceptional* case[] where the trial court's decision cannot be located within the *range* of permissible decisions." *Cavera*, 550 F.3d at 189 (emphasis added); *see also United States v. Gouse*, 468 F. App'x 75, 78 (2d Cir. 2012) (summary order) (affirming as substantively reasonable a 120-month sentence for child pornography possession, where there was no evidence that defendant had ever had inappropriate contact with a minor, or had distributed child pornography); *United States v. Magner*, 455 F. App'x 131, 134-35 (2d Cir. 2012) (summary order) (affirming 108-month sentence in same circumstances). Moreover, unlike *Dorvee*, Hagerman was not sentenced to the 240-month statutory maximum, nor did the district court speculate in considering his likelihood of reoffending. *See, e.g.*, *United States v. Aumais*, 656 F.3d 147, 149 & 157 (2d Cir. 2011) (affirming 121-month sentence, and noting that, unlike in *Dorvee*, the district court's sentence was "well short of the statutory maximum"); *United States v. Henchey*, 443 F. App'x 617, 619-620 (2d Cir. 2011) (summary order) (affirming as substantively reasonable a 120-month sentence for possessing and receiving child pornography for defendant with no past inappropriate contact with minors, and distinguishing *Dorvee* on the ground that the sentence was "well below . . . the statutory maximum"). Accordingly, we do not conclude that Hagerman's sentence was substantively unreasonable.

Next, Hagerman objects to the district court's restitution order on multiple grounds. First, Hagerman contends that the district court erred in concluding that he proximately caused a portion of Vicky's harms. We disagree. In our decision in *Aumais*, we joined the majority of our sister circuits in holding that where an individual depicted in child pornography seeks

6

restitution from a defendant who has been convicted for possessing that pornography, the victim's losses "must be proximately caused by the defendant's offense." *Aumais*, 656 F.3d at 153. That standard has been met here. The district court reasonably found that Vicky had actual knowledge of Hagerman's offense conduct as her representative had informed her of this action, and that her knowledge that Hagerman was among those who had downloaded her picture had caused her actual and ongoing psychological harm, as demonstrated in her victim impact statement and psychological evaluations. *See United States v. Kearney*, 672 F.3d 81, 99–100 (1st Cir. 2012) (holding proximate cause satisfied where victim submitted evidence of notice and harm).

Hagerman also objects to the district court's determination of the amount of restitution attributable to his conduct. Although the district court determined that Hagerman proximately caused only $6,636.24 of Vicky's recoverable losses, the district court nevertheless held Hagerman jointly and severally liable for all $975,917.64 of those losses. Both parties agree that the imposition of joint and several liability was improper in the circumstances of this case. We also agree. In *Aumais*, we held that the wording of "[s]ection 3664(h) implies that joint and several liability may be imposed only when a single district judge is dealing with multiple defendants in a single case" and "does not contemplate apportionment of liability among defendants in different cases, before different judges, in different jurisdictions around the country." *Aumais*, 656 F.3d at 156. The district court's imposition of joint and severally liability in this single action against Hagerman is squarely foreclosed by *Aumais*.[1]

---

[1] The district court's opinion argues that *Aumais* and the cases on which it relied were wrongly decided. It is well-established, however, that a panel of this Court does not have the authority to overrule a precedent set by a prior panel. *See, e.g.*, *United States v. Minaya*, 321 F.

We hold that Hagerman should only be responsible for the losses that he proximately caused. The district court determined that Hagerman, as one of approximately 146 defendants successfully prosecuted for the unlawful possession of child pornography featuring Vicky, contributed to 1/146 or 0.68% of the harm she sustained from the downloading of her images from the Internet. The district court also found that the harm caused her to suffer total economic losses of $1,224,697.04, of which $248,779.40 had been collected through restitution payments from other defendants, leaving $975,917.65 unpaid and recoverable. Then the district court applied the percentage of harm caused by Hagerman to the unpaid loss balance to find Hagerman as having proximately caused $6,636.24 of Vicky's unpaid losses. We find this approach to determining the proximate loss amount, on a per capita basis, to be reasonable but misapplied in the actual calculation. Since a total of 146 individuals generated a total of $1,224.697.04 in losses, Hagerman's share should be 1/146 of that total or $8,388.31. The district court's calculation overlooks the fact that some of the 146 defendants had already paid their restitution to the victim and cannot be counted on to make further contributions toward the unpaid loss balance. Counting them among the remaining contributors improperly reduced Hagerman's share of the burden.

Hagerman next contends that the district court abused its discretion in declining his request to hold an evidentiary hearing to resolve certain issues related to the court's restitution award. We have observed that:

> [I]n the context of contested issues regarding the propriety of a restitution award, . . . the sentencing procedures employed to resolve such disputes are within the district court's discretion so long as the defendant is given an adequate opportunity to present his

App'x 37, 42 (2d Cir. 2009) (summary order).

8

position[.]   The district court is not required, by either the Due Process Clause or the federal Sentencing Guidelines, to hold a full-blown evidentiary hearing in resolving sentencing disputes. All that is required is that the court afford the defendant some opportunity to rebut the Government's allegations.

*United States v. Sabhnani*, 599 F.3d 215, 257-258 (2d Cir. 2010) (internal quotation marks and alterations omitted).  Pursuant to 18 U.S.C. § 3664(d)(5), so long as the victim's losses are ascertainable at least ten days before sentencing, and the documents supporting the victim's losses are provided to the defendant within this time-frame, the district court may decide restitution at the sentencing hearing without holding a separate evidentiary hearing.  *See also* Fed. R. Crim P. 32(i)(2) ("The court *may* permit the parties to introduce evidence on the [parties'] objections [to the probation officer's presentence report]." (emphasis added)).  As such, at the sentencing phase of a criminal proceeding, a defendant has no right to "a hearing at which to cross-examine his victims."  *United States v. Morrison*, 153 F.3d 34, 54 (2d Cir. 1998).

Here, Hagerman contends that the exhibits submitted by the government and Vicky in support of a restitution award are not "reliable and accurate" because they are "unsworn" and are based on information "non-specific to Mr. Hagerman."  Pet'r's Br. 48 (citing *United States v. Pugliese*, 805 F.2d 1117, 1124 (2d Cir. 1986) (sentencing court has "due process obligations . . . to consider only reliable and accurate information")).  Further, Hagerman requested a hearing to determine: (1) whether he actually viewed the images of Vicky, (2) whether his offense conduct proximately caused Vicky's harms, (3) what portion of the damages should be attributed to (a) Vicky's biological father, who sexually abused Vicky and distributed images of the abuse on the internet, (b) others that viewed the images, and (c) those viewers of the images who have sought to contact Vicky, and (4) what amount of counseling Vicky is entitled to.  Hagerman thus contends that he "objected . . . with specificity" to Vicky's and the government's submissions

9

prior to sentencing, and that, accordingly, the statements made in those submissions cannot be relied upon unless substantiated by "sworn testimony subject to cross-examination."

We disagree that any further corroboration through an evidentiary hearing was required here. As an initial manner, § 3664 expressly provides that "[n]o victim shall be required to participate in any phase of a restitution order." 18 U.S.C. § 3664(g)(1); *see also United States v. Fatico*, 579 F.2d 707, 713 (2d Cir. 1978) ("Due process does not prevent use in sentencing of out-of-court declarations" by a person whose true identity is not disclosed "where there is good cause for the nondisclosure of [her] identity and there is sufficient corroboration by other means."). The district court had determined by a preponderance of the evidence after careful review of the records submitted by the government that Vicky's re-victimization by those who downloaded her images from the Internet was responsible for all of her recoverable losses. This is because she was recovering through therapy from her original abuse when she learned that her images were being distributed on the Internet. It was this startling discovery that "threw her world into chaos" and continues to haunt her even as she is now secure in her knowledge that her original perpetrator is in prison and cannot harm her again. The district court was persuaded by Vicky's psychological reports and victim impact statements that her ongoing suffering is nearly exclusively the result of her re-victimization.

Hagerman does not rebut these findings. More broadly, despite ample opportunity, Hagerman has never once indicated what evidence he would submit, or testimony he would elicit, at a restitution hearing. He has remained silent throughout, including: (a) his July 22, 2011 sentencing memorandum, submitted in anticipation of the sentencing hearing; (b) his counsel's opportunity at the sentencing hearing to object to the PSR, which stated that the "net

10

amount of economic losses" suffered by Vicky for restitution purposes is "$975,917.64," PSR ¶ 13; *see* App'x 76 (no objection when the district court expressly adopted all "the factual information contained in the Presentence Report"); (c) the two months in between the August 17 sentencing hearing and the district court's November 30 restitution order, during which time Hagerman submitted nothing to the court relevant to restitution; and (d) his brief in the instant appeal, *see* Pet'r's Br. 50-53.

Moreover, many of the issues identified by Hagerman as needing to be further developed at a hearing are purely legal, not factual. Specifically, in contending that a hearing is necessary to resolve issues of causation — *i.e.*, whether Hagerman proximately caused Vicky's harm, and if so, how damages should be apportioned between the various perpetrators who caused Vicky harm — Hagerman does not identify any underlying unresolved factual disputes relating to these issues. Further, as to the issues not relating to causation, Hagerman did not proffer any evidence indicating that he had a fact-based disagreement with the information contained in Vicky's submissions. In other words, Hagerman did not indicate that he would testify that he had not actually viewed the images, nor did he indicate that he had a fact-based objection to the forensic accounting of the monetary harm Vicky has suffered as a result of her victimization.

Because Hagerman failed to proffer any evidence he would offer at a restitution hearing, and because he failed to identify any factual issues susceptible to resolution at a hearing, we conclude that the district court did not abuse its discretion in ordering restitution based on the parties' submissions alone. *See United States v. Pierre*, 285 F. App'x 828, 829 (2d Cir. 2008) (summary order) (holding the "District Court did not abuse its discretion in choosing not to hold a hearing before ordering restitution in the amount of $618,312" where it gave defendant "the

11

opportunity to challenge the restitution amount" (internal quotation marks omitted)); *United States v. Slevin*, 106 F.3d 1086, 1091 (2d Cir. 1996) ("All [the process] that is required [to award restitution] is that the court afford the defendant some opportunity to rebut the Government's allegations." (internal quotation marks omitted)); *see also United States v. Payne*, 125 F.3d 845, 1997 WL 609128, at *4 (2d Cir. Oct. 3, 1997) (summary order) (holding no abuse of discretion in denying request for restitution hearing where "the district court afforded the appellant ample opportunity to object to the loss figures in the PSR and to present evidence in support of his position").

Finally, Hagerman contends that remand is necessary because the district court failed to consider his ability to pay restitution, and did not determine whether restitution would be payable immediately or according to a schedule of payments. Although the district cannot consider ability to pay in determining the amount of any restitution award, 18 U.S.C. §§ 2259(b)(4)(B), 3664(f)(1)(A), the court is obligated to set the defendant's restitution payment schedule "in consideration of . . . the financial resources and other assets of the defendant," 18 U.S.C. § 3664(f)(2); *see United States v. Lucien*, 347 F.3d 45, 53 (2d Cir. 2003) ("[T]he record must disclose some affirmative act or statement allowing an inference that [in determining the schedule of payments] the district court in fact considered the defendant's ability to pay." (internal quotation marks omitted)). The district court here already recognized that it neglected to set a payment schedule, and sought leave from this Court to correct its mistake after Hagerman filed his noticed of appeal. Since we reverse on the ground that the district court incorrectly calculated the amount of harm attributable to Hagerman, however, there is no need to grant the district court's request for leave to correct the order. When the district court

12

reconsiders the appropriate calculation of the restitution owed by the defendant on remand, the district court should also consider the defendant's financial circumstances in setting a restitution payment schedule that accords with the "interest of justice." 18 U.S.C. § 3572(d)(1).

Accordingly, for the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**, the restitution order is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this Order.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

13